**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | | |
|---|---|---|
| STEVE ALVAREZ<br>5359 Balsam Place<br>Mason, Ohio 45040, | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| ACTALENT SERVICES, LLC<br>7301 Parkway Drive<br>Hanover, Maryland 21076, | ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>ACTALENT SERVICES, LLC<br>c/o Corporation Service Company<br>1160 Dublin Road, Suite 400<br>Columbus, Ohio 43215 | ) ) ) ) ) ) | |
| and, | ) ) | |
| DAVID ENGLISH<br>c/o Actalent Services, LLC<br>7301 Parkway Drive<br>Hanover, Maryland 21076, | ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff, Steve Alvarez, by and through undersigned counsel, as his Complaint against Defendants Actalent Services, LLC ("Actalent") and David English, states and avers the following:

**PARTIES, JURISDICTION, & VENUE**

1. Alvarez is a resident of the city of Mason, Warren County, Ohio.

2. David English is a resident of the state of Ohio.

3. At all times herein, English was acting in the course and scope of his employment.

4. English is, and at all times hereinafter mentioned, was an individual who was a manger and/or supervisor at Actalent and who acted directly or indirectly in the interests of Actalent in relation to its employees, and is an employer within the meaning of R.C. § 4112.01 *et seq.*

5. Actalent is a foreign limited liability company that does business at 7301 Parkway Drive, Hanover, Maryland 21076.

6. Actalent is and, at all times herein, was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII")

7. Actalent is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

8. All the material events alleged in this Complaint occurred in Clermont County, Ohio.

9. On or about June 12, 2025, the Equal Employment Opportunity Commission issued a Notice of Right to Sue letter to Alvarez regarding a Charge of Discrimination Alvarez filed against Actalent. See Exhibit A.

10. On or about March 6, 2025, the Ohio Civil Rights Commission issued a Notice of Right to Sue letter to Alvarez regarding a Charge of Discrimination Alvarez filed against English. See Exhibit B.

11. Alvarez has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(a).

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Alvarez is alleging Federal Law Claims under Title VII.

13. This Court has supplemental jurisdiction over Alvarez's state law claims pursuant to 28 U.S.C. § 1367 as Alvarez's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

15. On or around March 22, 2022, Alvarez began working for Actalent.

16. Actalent employed Alvarez as a Safety Manager.

17. Alvarez is Hispanic and of Mexican descent.

18. In or around January of 2024, Actalent assigned Alvarez to work under the supervision of English as a member of the Dry Plant Safety Team.

19. English is Caucasian.

20. English was Alvarez's supervisor.

21. English subjected Alvarez and other Hispanic employees to discriminatory treatment and treated them in an unfavorable manner as compared to Caucasian employees. ("Discriminatory Treatment")

22. The Discriminatory Treatment included English speaking condescendingly to Alvarez and other Hispanic employees.

23. The Discriminatory Treatment included English directing abusive language at Alvarez and other Hispanic employees as well as cursing at them.

24. The Discriminatory Treatment included English reprimanding Alvarez and other Hispanic employees for actions that Caucasian employees often did without any repercussions.

25. The Discriminatory Treatment included English berating Alvarez in front of other employees on a weekly basis.

26. The Discriminatory Treatment included English making racially charged statements to Hispanic employees, such as telling them that all employees who don't "check the box" should be fired.

27. English's "check the box" comment was referring to the race that employees indicated on their applications.

28. On or about February 17, 2024, Alvarez reported English's Discriminatory Treatment to Actalent management. ("Discrimination Complaint")

29. Actalent has a policy against discrimination. ("Discrimination Policy")

30. The Discriminatory Treatment violates the Discrimination Policy.

31. Actalent has a policy to investigate reports of violations of the Discrimination Policy.

32. An investigation should include interviewing the complainant.

33. An investigation should include interviewing the subject of the complaint.

34. An investigation should include interviewing the subject of the reported discrimination.

35. An investigation should include interviewing witnesses to the reported discrimination.

36. An investigation should include getting a written statement from the complainant.

37. An investigation should include getting a written statement from the subject of the complaint.

38. An investigation should include getting a written statement from the subject of the reported discrimination.

39. An investigation should include getting a written statement from witnesses to the reported discrimination.

40. In response to the Discrimination Complaint, Actalent did not interview Alvarez.

41. In response to the Discrimination Complaint, Actalent did not interview English.

42. In response to the Discrimination Complaint, Actalent did not interview witnesses of the Discriminatory Treatment.

43. In response to the Discrimination Complaint, Actalent did not get a written statement from Alvarez.

44. In response to the Discrimination Complaint, Actalent did not get a written statement from English.

45. In response to the Discrimination Complaint, Actalent did not get written statements from witnesses of the Discriminatory Treatment.

46. Actalent did not take remedial action against any employees in response to the Discriminatory Treatment.

47. Actalent failed to take prompt remedial action in response to the Discriminatory Treatment.

48. English faced no disciplinary action from Actalent management for the Discriminatory Treatment.

49. On or about February 22, 2024, Actalent terminated Alvarez's employment. ("Termination")

50. Actalent has a progressive disciplinary policy. ("Discipline Policy")

51. A verbal warning is the lowest level of discipline in the Discipline Policy.

52. Alvarez did not receive a verbal warning before the Termination.

53. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

54. Alvarez did not receive a written warning before the Termination.

55. A termination is the highest level of discipline in the Discipline Policy.

56. Actalent knowingly skipped progressive disciplinary steps in terminating Alvarez's employment.

57. Actalent knowingly terminated Alvarez's employment.

58. Actalent knowingly took an adverse employment action against Alvarez.

59. Actalent knowingly took an adverse action against Alvarez.

60. Actalent intentionally skipped progressive disciplinary steps in terminating Alvarez's employment.

61. Actalent intentionally terminated Alvarez's employment.

62. Actalent intentionally took an adverse employment action against Alvarez.

63. Actalent intentionally took an adverse action against Alvarez.

64. Actalent willfully skipped progressive disciplinary steps in terminating Alvarez's employment.

65. Actalent willfully terminated Alvarez's employment.

66. Actalent willfully took an adverse employment action against Alvarez.

67. Actalent willfully took an adverse action against Alvarez.

68. Actalent knew that skipping progressive disciplinary steps in terminating Alvarez's employment would cause Alvarez harm, including economic harm.

69. Actalent knew that terminating Alvarez's employment would cause Alvarez harm, including economic harm.

70. The Termination was because of Alvarez's race.

71. The Termination was retaliation for Alvarez's Discrimination Complaint.

72. As a direct and proximate result of Actalent's conduct, Alvarez suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII
### (As Against Actalent)

73. Alvarez restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

74. Throughout his employment, Alvarez was fully competent to perform his essential job duties.

75. Actalent treated Alvarez differently than other similarly situated employees based on his race.

76. Actalent violated Title VII by discriminating against Alvarez due to his race.

77. On or about February 22, 2024, Actalent terminated Alvarez's employment without just cause.

78. At all times material herein, similarly situated non-Hispanic employees were not terminated without just cause.

79. Actalent terminated Alvarez's employment based on his race.

80. Actalent violated Title VII when they terminated Alvarez's employment based on his race.

81. As a direct and proximate result of Actalent's conduct, Alvarez has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.02 *et seq.*
### (As Against Actalent)

82. Alvarez restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

83. Throughout Alvarez's employment, Alvarez was fully competent to perform Alvarez's essential job duties.

84. Actalent treated Alvarez differently than other similarly situated employees based on Alvarez's race.

85. Actalent violated R.C. § 4112.02(A) *et seq.* by discriminating against Alvarez due to Alvarez's race.

86. On or around February 22, 2024, Actalent terminated Alvarez's employment without just cause.

87. At all times material herein, similarly situated non-Hispanic employees were not terminated without just cause.

88. Actalent terminated Alvarez's employment based on Alvarez's race.

89. Actalent violated R.C. § 4112.01 *et seq.* when it terminated Alvarez's employment based on Alvarez's race.

7

90. As a direct and proximate result of Actalent's conduct, Alvarez has suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT III:  RETALIATION IN VIOLATION OF TITLE VII
**(As Against Actalent)**

91. Alvarez restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

92. As a result of the discriminatory conduct described above, Alvarez made the Discrimination Complaint.

93. Subsequent to Alvarez's Discrimination Complaint, Actalent terminated Alvarez's employment.

94. Actalent's actions were retaliatory in nature based on Alvarez's opposition to the unlawful conduct.

95. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing a discriminatory practice.

96. As a direct and proximate result of Actalent's conduct, Alvarez suffered and will continue to suffer damages.

### COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
**(As Against All Defendants)**

97. Alvarez restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

98. As a result of the discriminatory conduct described above, Alvarez made the Discrimination Complaint.

99. Subsequent to the Discrimination Complaint, Actalent retaliated by terminating Alvarez's employment.

100. Actalent's actions were retaliatory in nature based on Alvarez's opposition to the unlawful discriminatory conduct.

101. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section. . . "

102. As a direct and proximate result of Actalent's conduct, Alvarez suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT V: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (As Against English)

103. Alvarez restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

104. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice…"

105. English aided, abetted, incited, coerced, and/or compelled Actalent's discriminatory treatment of Alvarez.

106. English aided, abetted, incited, coerced, and/or compelled Actalent's discriminatory termination of Alvarez.

107. English violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

108. As a direct and proximate result of English's conduct, Alvarez has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Alvarez respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Actalent to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation Complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against each Defendant of compensatory and monetary damages to compensate Alvarez for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Alvarez's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f)  An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Trisha Breedlove
Trisha Breedlove (0095852)
Milan Gligorevic (0104528)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
         milan.gligorevic@spitzlawfirm.com

*Attorneys for Plaintiff Steve Alvarez*

## JURY DEMAND

Plaintiff Steve Alvarez demands a trial by jury by the maximum number of jurors permitted.

Trisha Breedlove (0095852)
Milan Gligorevic (0104528)

*Attorneys for Plaintiff Steve Alvarez*

11